Kilpatrick Townsend & Stockton LLP
Alton L. Absher III (State Bar No. 355625)
aabsher@ktslaw.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: 415 576 0200
Facsimile: 415 576 0300

Rishi Gupta (State Bar No. 313079)
RGupta@ktslaw.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
Telephone: 310 248 3830
Facsimile: 310 860 0363

Attorneys for Plaintiffs
ULTRA-MEK, INC., LEGGETT & PLATT, INC., AND L&P PROPERTY MANAGEMENT COMPANY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ULTRA-MEK, INC., LEGGETT & PLATT, INC., AND L&P PROPERTY MANAGEMENT COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>JIANGSU CARYA SMART HOME HARDWARE CO., LTD., LIVING STYLE GROUP LTD., TRUE INNOVATIONS & DESIGN (USA) LLC, LIVING STYLE (SINGAPORE) PTE. LTD., LIVING STYLE (VIETNAM) LTD., HENGLIN HOME FURNISHINGS CO., LTD., NANJING HENGNING HOME FURNISHINGS CO., LTD., ZHEJIANG HENGJIAN HOME FURNISHING CO. LTD., COLAMY, INC., AURORA MAISON, INC., AND AERISNEXUS INNOVATIONS, INC.,<br><br>Defendants. | Case No. 2:26-cv-9471<br><br>**ULTRA-MEK, INC., LEGGETT & PLATT, INC., AND L&P PROPERTY MANAGEMENT COMPANY'S COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Ultra-Mek, Inc. ("Ultra-Mek"), Leggett & Platt Incorporated ("L&P"), and L&P Property Management Company ("L&P Management") (collectively, the "Plaintiffs"), for their Complaint against Defendants Jiangsu Carya Smart Home Hardware Co., Ltd.; Living Style Group Ltd.; True Innovations & Design (USA) LLC; Living Style (Singapore) Pte. Ltd.; Living Style (Vietnam) Ltd.; Henglin Home Furnishings Co., Ltd.; Nanjing Hengning Home Furnishings Co., Ltd.; Zhejiang Hengjian Home Furnishing Co. Ltd.; Colamy, Inc.; Aurora Maison, Inc.; and Aerisnexus Innovations, Inc. (collectively, the "Defendants") state as follows:

## NATURE OF ACTION

1. This is an action under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for infringement by Defendants of patents owned by Ultra-Mek and L&P Property Management Company.

2. As described more fully below, Defendants are manufacturing, causing to be manufactured, offering for sale, selling, importing into the United States, and/or distributing, without Plaintiffs' authorization, seating units and mechanisms that infringe, directly or indirectly, Plaintiffs' patents.

## THE PARTIES

3. Plaintiff Ultra-Mek, Inc. is a corporation organized under the laws of the State of North Carolina having its headquarters and principal place of business at 487 Bombay Road, Denton, North Carolina 27239. Ultra-Mek is the owner of all rights and title to United States Patent No. 8,016,348 (the "'348 Patent") and United States Patent No. 8,297,693 (the "'693 Patent") (collectively the "Ultra-Mek Patents"). *See* Ex. 1 [copy of the '348 patent]; Ex. 2 [copy of the '693 patent].

4. Plaintiff L&P Management is a company organized under the laws of Delaware with a principal place of business at No. 1 Leggett Road, Carthage, Missouri 64836. L&P Management is the owner of all rights and title to United

States Patent No. 8,398,165 (the "'165 Patent") and United States Patent No. 8,398,168 (the "'168 Patent") (collectively, the "L&P Patents") (collectively with the Ultra-Mek Patents, the "Asserted Patents"). *See* Ex. 3 [copy of the '165 patent]; Ex. 4 [copy of the '168 patent].

5. Plaintiff L&P is a corporation organized under the laws of Missouri, with a principal place of business at No. 1 Leggett Road, Carthage, Missouri 64836. L&P Management is a wholly owned subsidiary of L&P. L&P is the exclusive licensee of the Ultra-Mek Patents and the L&P Patents.

6. On information and belief, Defendant Jiangsu Carya Smart Home Hardware Co., Ltd. ("Carya Smart") is a company organized and existing under the laws of China, having its principal place of business at No. 2 Jinchuan Rd., Industry Zone, Daqiao Town, Jiangdu District, Yangzhou Province, China.

7. On information and belief, Defendant Living Style Group, Ltd. ("Living Style Group") is a company organized and existing under the laws of Hong Kong having its principal place of business at 11/F, Lifung Tower, 888 Cheung Sha Wan Road, Kowloon, Hong Kong.

8. On information and belief, Defendant True Innovations & Design (USA) LLC ("True Innovations") is a company organized and existing under the laws of the state of Delaware, having its principal place of business at 2052 Alton Pkwy Irvine, CA 92606-4905, United States. True Innovations is a subsidiary of Living Style Group.

9. On information and belief, Defendant Living Style (Singapore) Pte. Ltd. ("Living Style (Singapore)") is a company organized and existing under the laws of Singapore, having its principal place of business at 3 Kallang Junction #05-02 Singapore, 339265. Living Style (Singapore) Pte. Ltd. is a subsidiary of Living Style Group.

10. On information and belief, Defendant Living Style (Vietnam) Ltd. ("Living Style (Vietnam)") is a company organized and existing under the laws of Vietnam, having its principal place of business at 1st & 2nd Floor River Garden 170 Nguyen, Van Huong Ho Chi Minh, Vietnam 71300-0. Living Style (Vietnam) Ltd. is a subsidiary of Living Style Group.

11. Collectively, Living Style Group, True Innovations, Living Style (Singapore), and Living Style (Vietnam) are referred to as the "Living Style Defendants."

12. On information and belief, Defendant Henglin Home Furnishings Co. Ltd. ("Henglin") is a company organized and existing under the laws of China, having its principal place of business at No. 378 and 380 Jiaxi Rd., Dipu Street, Huzhou, Zhejiang, 313300, China.

13. On information and belief, Defendant Nanjing Hengning Home Furnishings Co., Ltd. ("Nanjing") is a company organized and existing under the laws of China, having its principal place of business at Room 206, Building B, Shimao Chengpin, Yuhuatai District, Nanjing. Nanjing is a subsidiary of Henglin.

14. On information and belief, Defendant Zhejiang Hengjian Home Furnishing Co. Ltd. ("Zhejiang") is a company organized and existing under the laws of China, having its principal place of business at South Building 31 8 Baishi Lane, Gongshu District, Hangzhou, Zhejiang Hangzhou, China. Zhejiang is a subsidiary of Henglin.

15. On information and belief, Defendant Aurora Maison, Inc. ("Aurora Maison") is a company organized and existing under the laws of Colorado, having its principal place of business at 6275 Joyce Dr., Arvada, CO, 80403. Aurora Maison, Inc. is a subsidiary of Henglin.

16. On information and belief, Defendant Colamy, Inc. ("Colamy") is a company organized and existing under the laws of California, having its principal

place of business at 10985 Oleander Avenue, Fontana, CA 92337. Colamy, Inc. is a subsidiary of Henglin.

17. On information and belief, Defendant Aerisnexus Innovations, Inc. ("Aerisnexus") is a company organized and existing under the laws of Oklahoma, having its principal place of business at 2220 NW 36th St. Oklahoma City, OK 73112. On information and belief, Aerisnexus Innovations, Inc. is a subsidiary and/or agent of Henglin.

18. Collectively, Henglin, Zhejiang, Nangjing, Colamy, Aurora Maison, and Aerisnexus are referred to as the "Henglin Defendants."

**JURISDICTION**

19. This action arises under the patent laws of the United States. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

20. This Court has personal jurisdiction over Defendants because Defendants (1) have engaged in systematic and continuous business activities in this District by doing business in California and expressly aiming activities toward the State of California through contacts created by Defendants; (2) have committed acts of patent infringement giving rise to this action within this State and District; and (3) have otherwise established contacts with California making the exercise of personal jurisdiction proper in that Defendants make, import, ship, distribute, offer for sale, sell, use, and/or advertise infringing products in California, directly and/or through subsidiaries and agents (including distributors, retailers, and others). Defendants have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

21. On information and belief, the Living Style Defendants make, use, sell, offer for sale, and/or import infringing rocker-recliner and glider-recliner seating

units containing infringing rocker-recliner and glider-recliner mechanisms manufactured by Carya Smart throughout the United States, specifically targeting California and directing these infringing activities at California. On information and belief, Defendant Living Style Group uses its subsidiaries Living Style (Singapore), Living Style (Vietnam), and True Innovations to expressly target the California market and California consumers and conduct their infringing activities. For example, Living Style Group uses Living Style (Vietnam) to purchase infringing rocker-recliner and glider-recliner mechanisms from Carya Smart and manufacture finished, infringing seating units incorporating those mechanisms to be sold in California. Living Style Group uses Living Style (Singapore) to import those infringing seating units and mechanisms into the United States and California for sale to furniture retailers and big-box stores, including for example to True Innovations. True Innovations maintains significant places of business in California, including its principal place of business at 2052 Alton Pkwy Irvine, California.

22. On information and belief, the Henglin Defendants make, use, sell, offer for sale, and/or import infringing rocker-recliner and glider-recliner seating units containing infringing rocker-recliner and glider-recliner mechanisms manufactured by Carya Smart throughout the United States, specifically targeting California and directing these infringing activities at California. On information and belief, Defendant Henglin uses its subsidiaries Zhejiang, Nanjing, Colamy, Aurora Maison, and Aerisnexus to expressly target the California market and California consumers and conduct their infringing activities.

23. For example, Henglin purchases infringing rocker-recliner and glider-recliner mechanisms from Carya Smart and manufactures finished, infringing seating units incorporating those mechanisms to be sold in California. On information and belief, Henglin uses Zhejiang to export those infringing seating units and mechanisms into the United States and California for sale through major

e-commerce sites directly to consumers. On information and belief, Henglin uses Nanjing as the seller / importer of record on major e-commerce sites to list infringing seating units online for sale and import, sell, and/or offer to sell those infringing seating units to consumers in California. On information and belief, Henglin also uses Nanjing to own the "COLAMY" U.S. trademark under which infringing seating units are sold. On information and belief, Henglin uses Colamy as its registered agent for service of process in the United States, and also to import and/or sell infringing seating units in California bearing the "COLAMY" brand through Colamy's website www.colamyhome.com. On information and belief, Henglin also uses Colamy's principal place of business (10985 Oleander Avenue, Fontana, California) as a "Henglin USA Warehouse" for the warehousing, shipping, and distribution of infringing seating units. On information and belief, Henglin uses Aurora Maison to maintain the website www.colamyhome.com through which Henglin sells infringing seating units in California. On information and belief, Henglin uses Aerisnexus to import and/or sell within the United States and California infringing seating units, including through Henglin's "Henglin USA Warehouse" in California.

24. On information and belief, Carya Smart manufactures and sells infringing rocker-recliner and glider-recliner mechanisms (such as the Carya Smart 5115 rocker mechanism and 7115 glider mechanism) to Living Style and Henglin for importation to the United States in finished infringing powered rocker-recliners and glider-recliners such as those bearing the "Barcalounger" and/or "COLAMY" brands.

25. To the extent it is found that one or more of the Defendants is not subject to the jurisdiction in any state's court of general jurisdiction, this Court additionally and/or alternatively has personal jurisdiction over non-resident Defendants Carya Smart, Living Style Group, Living Style (Singapore), Living

Style (Vietnam), Henglin, Zhejiang, and Nanjing under Federal Rule of Civil Procedure Rule 4(k)(2) at least because Plaintiffs' patent infringement claims arise under federal law; and Defendants have made contacts with the United States sufficient to comport with due process including at least the following: Defendants do business in the United States; Defendants expressly aim activities such as the warehousing and marketing of infringing products toward and throughout the United States through contacts that the Defendants themselves have created; Defendants have committed acts of patent infringement giving rise to this action within the United States; and, Defendants have otherwise established contacts with the United States making the exercise of personal jurisdiction proper including that Defendants make, import, ship, distribute, offer for sale, sell, use, and/or advertise the infringing products in the United States, directly and/or through subsidiaries and agents (including distributors, retailers, and others).

26. On information and belief, Defendants' California-based importation, warehousing, and sales activities are part of those activities giving rise to Plaintiffs' patent infringement claims.

## **VENUE**

27. Venue is proper in this District under 28 U.S.C. § 1391(c)(3) for Defendants Carya Smart, Living Style Group, Living Style (Singapore), Living Style (Vietnam), Henglin, Nanjing, and Zhejiang, because they are foreign corporations.

28. Venue is proper in this District for Defendant True Innovations under 28 U.S.C. § 1400(b) because, on information and belief, True Innovations has committed acts of infringement within the State of California and within this District, and True Innovations has a regular and established place of business within this District, having its principal place of business at 2052 Alton Pkwy, Irvine, California 92606.

29. Venue is proper in this District for Defendant Colamy under 28 U.S.C. § 1400(b) because Colamy is incorporated in the State of California and therefore, for venue purposes, "resides" in California.

30. Venue is proper for Defendant Aurora Maison under 28 U.S.C. § 1400(b) at least because, on information and belief, Aurora Maison has committed acts of infringement in the State of California and within this District, and has a regular and established place of business in the State of California and within this District at 10985 Oleander Avenue, Fontana, California.

31. Venue is proper for Defendant Aerisnexus under 28 U.S.C. § 1400(b) because, on information and belief, Aerisnexus has committed acts of infringement within this District and has a regular and established place of business within this District at 10985 Oleander Avenue, Fontana, California. On information and belief Aerisnexus has purchased and/or imported thousands of furniture products (including infringing seating units) with ports of unlading and/or final shipping destinations within this District and for sale in this District. For example, on information and belief, Aerisnexus has purchased and/or imported for sale in the United States infringing seating units that were distributed through Henglin's "Henglin USA Warehouse" at 10985 Oleander Avenue, Fontana, California.

## **PATENTS-IN-SUIT**

32. L&P is the exclusive licensee of the L&P patents and the Ultra-Mek patents. Accordingly, L&P has standing to bring this action for patent infringement.

33. Ultra-Mek is the owner by assignment of all rights, title, and interest in and to the Ultra-Mek patents, including the right to sue thereon and the right to recover for infringement thereof. Accordingly, Ultra-Mek has standing to bring this action for patent infringement. *See*

34. L&P Management is the owner by assignment of all rights, title, and interest in and to the L&P Patents, including the right to sue thereon and the right to

recover for infringement thereof. Accordingly, L&P Management has standing to bring this action for patent infringement.

35. The ’348 patent was issued on September 13, 2011 by the United States Patent and Trademark Office. The ’348 patent is entitled “Reciprocating Seating Unit with Power Actuator,” and lists D. Stephen Hoffman and Marcus L. Murphy as the inventors. A true and accurate copy of the ’348 patent is attached hereto as Exhibit 1 and is incorporated herein by reference.

36. The ’693 patent was issued on October 30, 2012 by the United States Patent and Trademark Office. The ’693 patent is entitled “Reciprocating Seating Unit with Power Actuator,” and lists D. Stephen Hoffman and Marcus L. Murphy as the inventors. A true and accurate copy of the ’693 patent is attached hereto as Exhibit 2 and is incorporated herein by reference.

37. The ’165 patent was issued on March 19, 2013 by United States Patent and Trademark Office. The ’165 patent is entitled “Powered Rocker Recliner Linkage Mechanism,” and lists Gregory M. Lawson as the inventor. A true and accurate copy of the ’165 patent is attached hereto as Exhibit 3 and is incorporated herein by reference.

38. The ’168 patent was issued on March 19, 2013 by the United States Patent and Trademark Office. The ’168 patent is entitled “Powered Glider Recliner Linkage Mechanism,” and lists Gregory M. Lawson as the inventor. A true and accurate copy of the ’168 patent is attached hereto as Exhibit 4 and is incorporated herein by reference.

39. Without Plaintiffs’ permission, Defendants are making, using, offering for sale, selling, and/or importing seating units and/or reclining mechanisms that constitute direct infringement of the asserted patents. Defendants, either directly or through entities under their control or influence, manufacture, make, use, sell, offer for sale, and/or import powered gliding-reclining and/or powered rocking-reclining

mechanisms and seating units comprising those mechanisms, that fall within the scope of one or more claims of the asserted patents, directly in the United States, including at least claim 1 of the ’348 patent, at least claim 1 of the ’693 patent, at least claim 1 of the ’165 patent, and at least claim 1 of the ’168 patent.

40. For example, Defendants’ infringing products include, but are not limited to, powered gliding-reclining and rocking-reclining seating units including seating units manufactured under the “COLAMY” and/or “Barcalounger” brands and/or model numbers including “60399C”; “HL-60399”; and/or “60399”; and powered reclining mechanisms manufactured by Carya Smart with model numbers including 5115 and 7115 and seating units incorporating the same (collectively, the “Accused Seating Units”).

## JURY DEMAND

41. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury on all issues so triable.

## COUNT I

## (Infringement of United States Patent No. 8,016,348)

42. Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1-41 of this Complaint.

43. Defendants directly infringe the ’348 patent literally and/or under the doctrine of equivalents through acts including, but not limited to, the manufacture, use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units. Defendants’ manufacture, use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units directly infringe at least claim 1 of the ’348 patent literally and/or under the doctrine of equivalents as shown in Exhibit 5.

44. Defendants indirectly infringe the ’348 patent by contributing to and/or inducing the direct infringement of the ’348 patent by Defendants’ customers (*e.g.*,

furniture manufacturers, retailers, and consumers) when Defendants' customers manufacture, use, sell, import, distribute, and/or offer for sale the Accused Seating Units.

45. Defendants had knowledge of the '348 patent and their infringement thereof since at least the filing of this Complaint. The Living Style Defendants, the Henglin Defendants, and Carya Smart further had knowledge of the '348 patent at least as early as when the '348 patent was asserted by Ultra-Mek against Man Wah Holdings Ltd. and its subsidiaries in *Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, No. 1:16-CV-41 (M.D.N.C.), which resulted in a consent injunction entered by the Court on March 17, 2017; and when the '348 patent was asserted by Ultra-Mek against United Furniture Industries, Inc. and entities related to Man Wah Holdings Ltd. in *Ultra-Mek, Inc. v. United Furniture Industries, Inc. et al.*, No. 1:18-CV-281 (M.D.N.C.), which resulted in a consent injunction entered by the Court on November 17, 2022. On information and belief, the Living Style Defendants, the Henglin Defendants, and Carya Smart were aware of these actions and their outcomes at least because the Living Style Defendants and the Henglin Defendants directly compete with the Man Wah Group and monitor U.S. litigation involving their competitors, and because Carya Smart is a supplier of furniture mechanisms to the Living Style Defendants and the Henglin Defendants. The Living Style Defendants have also had knowledge of the '348 patent at least as early as February 23, 2023, when Ultra-Mek sent correspondence to the Living Style Defendants' licensor providing notice of the '348 patent and their infringement thereof. The Henglin Defendants have also had knowledge of the '348 patent at least as early as September 9, 2025, when Ultra-Mek sent correspondence to Henglin providing notice of the '348 patent and Henglin's infringement thereof. Carya Smart has also had knowledge of the '348 patent at least as early as September 25, 2025, when

Ultra-Mek sent correspondence to Carya Smart providing notice of the ’348 patent and Carya Smart’s infringement thereof.

46. The Accused Seating Units each comprise a Carya Smart powered rocker-recliner mechanism or powered glider mechanism (collectively, the “Accused Mechanisms”), including but not limited to the Carya Smart 5115 powered rocking mechanism and the Carya Smart 7115 powered gliding mechanism. The Accused Mechanisms are components and material parts of the invention of the ’348 patent. Defendants knew that the Accused Mechanisms are especially manufactured and/or adapted for use in a manner that infringes the ’348 patent when Defendants made, used, sold, offered for sale, imported, and/or incorporated into finished Accused Seating Units the Accused Mechanisms. The Accused Mechanisms are not staple articles of commerce and are not capable of any substantial noninfringing uses other than for infringement of the ’348 patent.

47. Defendants have induced direct infringement of the ’348 patent by Defendants’ customers (*e.g.*, furniture manufacturers, retailers, and consumers) because Defendants have committed specific acts that induced, aided, abetted, and/or facilitated this direct infringement with the knowledge that Defendants’ specific acts would result in direct infringement by Defendants’ customers.

48. Carya Smart has induced infringement of the ’348 patent by designing, manufacturing, and selling the Accused Mechanisms to its customers (*e.g.*, furniture manufacturers such as Henglin and/or Living Style (Vietnam)), with the specific intent to encourage Carya Smart’s customers to make, use, sell, offer for sale, and/or import the Accused Seating Units by incorporating the Accused Mechanisms therein, thus directly infringing the ’348 patent. Carya Smart has also induced infringement of the ’348 patent because Carya Smart copied the furniture mechanisms manufactured by Ultra-Mek and/or L&P when it designed the Accused Mechanisms with knowledge that Ultra-Mek and/or L&P’s mechanisms were

covered by the ’348 patent. Carya Smart then sold those copied Accused Mechanisms to its customers with the specific intent that Carya Smart’s customers would use the copied Accused Mechanisms in the same manner as the patented L&P and/or Ultra-Mek mechanisms and thus directly infringe the ’348 patent. Carya Smart also induced its customers’ direct infringement by marketing and advertising the Accused Mechanisms to its customers, and providing customer service and warranty support for the Accused Mechanisms to its customers.

49. The Living Style Defendants and the Henglin Defendants have induced infringement of the ’348 patent by encouraging their customers (*e.g.*, furniture retailers and consumers) to directly infringe. For example, the Living Style Defendants and the Henglin Defendants sell the Accused Seating Units to furniture retailers with the specific intent that those furniture retailers will sell the Accused Seating Units to consumers and therefore directly infringe the ’348 patent. The Living Style Defendants and the Henglin Defendants also induce customers’ direct infringement by providing instruction manuals with the Accused Seating Units that inform customers how to complete assembly of the Accused Seating Units (*e.g.*, attaching the backrest, connecting power cables, *etc.*) and operate the Accused Seating Units (*e.g*, moving the seating units between recline positions) with the specific intent that their customers would do so according to the instructions. The Living Style Defendants and the Henglin Defendants also induce customers’ direct infringement by marketing and advertising the Accused Seating Units to their customers, and providing customer service and warranty support for the Accused Seating Units to their customers.

50. Defendants’ infringement of the ’348 patent has caused damage to and continues to damage Plaintiffs. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

51. On information and belief, Defendants will continue in and enlarge their infringement of the ’348 patent unless and until they are enjoined by this Court.

52. The infringement of the ’348 patent by Defendants has been willful and deliberate as Defendants have acted in an objectively reckless manner in view of the high likelihood that their acts constituted infringement of the ’348 patent and with full knowledge of Ultra-Mek’s rights in the ’348 patent. As discussed above, Defendants have known of the ’348 patent and their infringement thereof and continued their unlawful actions nevertheless. Plaintiffs are entitled to increased damages under 35 U.S.C. § 284 and attorneys’ fees and costs under 35 U.S.C. § 285.

53. At all relevant times, Ultra-Mek complied with 35 U.S.C. § 287(a) by marking its covered products with the ’348 patent and requiring all licensees thereof to mark.

**COUNT II**

**(Infringement of United States Patent No. 8,297,693)**

54. Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1-53 of this Complaint.

55. Defendants directly infringe the ’693 patent literally and/or under the doctrine of equivalents through acts including, but not limited to, the manufacture, use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units. Defendants’ manufacture, use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units directly infringe at least claim 1 of the ’693 patent literally and/or under the doctrine of equivalents as shown in Exhibit 6.

56. Defendants indirectly infringe the ’693 patent by contributing to and/or inducing the direct infringement of the ’693 patent by Defendants’ customers (*e.g.*,

furniture manufacturers, retailers, and consumers) when Defendants' customers manufacture, use, sell, import, distribute, and/or offer for sale the Accused Seating Units.

57. Defendants had knowledge of the '693 patent and their infringement thereof since at least the filing of this Complaint. The Living Style Defendants, the Henglin Defendants, and Carya Smart further had knowledge of the '693 patent at least as early as when the '693 patent was asserted by Ultra-Mek against Man Wah Holdings Ltd. and its subsidiaries in *Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, No. 1:16-CV-41 (M.D.N.C.), which resulted in a consent injunction entered by the Court on March 17, 2017; and when the '693 patent was asserted by Ultra-Mek against United Furniture Industries, Inc. and entities related to Man Wah Holdings Ltd. in *Ultra-Mek, Inc. v. United Furniture Industries, Inc. et al.*, No. 1:18-CV-281 (M.D.N.C.), which resulted in a consent injunction entered by the Court on November 17, 2022. On information and belief, the Living Style Defendants, the Henglin Defendants, and Carya Smart were aware of these actions and their outcomes at least because the Living Style Defendants and the Henglin Defendants directly compete with the Man Wah Group and monitor U.S. litigation involving their competitors, and because Carya Smart is a supplier of furniture mechanisms to the Living Style Defendants and the Henglin Defendants. The Living Style Defendants have also had knowledge of the '693 patent at least as early as February 23, 2023, when Ultra-Mek sent correspondence to the Living Style Defendants' licensor providing notice of the '693 patent and their infringement thereof. The Henglin Defendants have also had knowledge of the '693 patent at least as early as September 9, 2025, when Ultra-Mek sent correspondence to Henglin providing notice of the '693 patent and Henglin's infringement thereof. Carya Smart has also had knowledge of the '693 patent at least as early as September 25, 2025, when

Ultra-Mek sent correspondence to Carya Smart providing notice of the ’693 patent and Carya Smart’s infringement thereof.

58. The Accused Seating Units each comprise a Carya Smart Accused Mechanism. The Accused Mechanisms are components and material parts of the invention of the ’693 patent. Defendants knew that the Accused Mechanisms are especially manufactured and/or adapted for use in a manner that infringes the ’693 patent when Defendants made, used, sold, offered for sale, imported, and/or incorporated into finished Accused Seating Units the Accused Mechanisms. The Accused Mechanisms are not staple articles of commerce and are not capable of any substantial noninfringing uses other than for infringement of the ’693 patent.

59. Defendants have induced direct infringement of the ’693 patent by Defendants’ customers (*e.g.*, furniture manufacturers, retailers, and consumers) because Defendants have committed specific acts that induced, aided, abetted, and/or facilitated this direct infringement with the knowledge that Defendants’ specific acts would result in direct infringement by Defendants’ customers.

60. Carya Smart has induced infringement of the ’693 patent by designing, manufacturing, and selling the Accused Mechanisms to its customers (*e.g.*, furniture manufacturers such as Henglin and/or Living Style (Vietnam)), with the specific intent to encourage Carya Smart’s customers to make, use, sell, offer for sale, and/or import the Accused Seating Units by incorporating the Accused Mechanisms therein, thus directly infringing the ’693 patent. Carya Smart has also induced infringement of the ’693 patent because Carya Smart copied the furniture mechanisms manufactured by Ultra-Mek and/or L&P when it designed the Accused Mechanisms with knowledge that Ultra-Mek and/or L&P’s mechanisms were covered by the ’693 patent. Carya Smart then sold those copied Accused Mechanisms to its customers with the specific intent that Carya Smart’s customers would use the copied Accused Mechanisms in the same manner as the patented

L&P and/or Ultra-Mek mechanisms and thus directly infringe the ’693 patent. Carya Smart also induced its customers’ direct infringement by marketing and advertising the Accused Mechanisms to its customers, and providing customer service and warranty support for the Accused Mechanisms to its customers.

61. The Living Style Defendants and the Henglin Defendants have induced infringement of the ’693 patent by encouraging their customers (*e.g.*, furniture retailers and consumers) to directly infringe. For example, the Living Style Defendants and the Henglin Defendants sell the Accused Seating Units to furniture retailers with the specific intent that those furniture retailers will sell the Accused Seating Units to consumers and therefore directly infringe the ’693 patent. The Living Style Defendants and the Henglin Defendants also induce customers’ direct infringement by providing instruction manuals with the Accused Seating Units that inform customers how to complete assembly of the Accused Seating Units (*e.g.*, attaching the backrest, connecting power cables, *etc.*) and operate the Accused Seating Units (*e.g*, moving the seating units between recline positions) with the specific intent that their customers would do so according to the instructions. The Living Style Defendants and the Henglin Defendants also induce customers’ direct infringement by marketing and advertising the Accused Seating Units to their customers, and providing customer service and warranty support for the Accused Seating Units to their customers.

62. Defendants’ infringement of the ’693 patent has caused damage to and continues to damage Plaintiffs. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

63. On information and belief, Defendants will continue in and enlarge their infringement of the ’693 patent unless and until they are enjoined by this Court.

64. The infringement of the ’693 patent by Defendants has been willful and deliberate as Defendants have acted in an objectively reckless manner in view of the high likelihood that their acts constituted infringement of the ’693 patent and with full knowledge of Ultra-Mek’s rights in the ’693 patent. As discussed above, Defendants have known of the ’693 patent and their infringement thereof and continued their unlawful actions nevertheless. Plaintiffs are entitled to increased damages under 35 U.S.C. § 284 and attorneys’ fees and costs under 35 U.S.C. § 285.

65. At all relevant times, Ultra-Mek complied with 35 U.S.C. § 287(a) by marking its covered products with the ’693 patent and requiring all licensees thereof to mark.

**COUNT III**

**(Infringement of United States Patent No. 8,398,165)**

66. Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1-65 of this Complaint.

67. Defendants directly infringe the ’165 patent literally and/or under the doctrine of equivalents through acts including, but not limited to, the manufacture, use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units and Accused Mechanisms that are capable of rocking. Defendants’ manufacture, use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units and Accused Mechanisms capable of rocking directly infringe at least claim 1 of the ’165 patent literally and/or under the doctrine of equivalents as shown in Exhibit 7.

68. Defendants indirectly infringe the ’165 patent by contributing to and/or inducing the direct infringement of the ’165 patent by Defendants’ customers (*e.g.*, furniture manufacturers, retailers, and consumers) when Defendants’ customers

manufacture, use, sell, import, distribute, and/or offer for sale the Accused Seating Units capable of rocking.

69. Defendants had knowledge of the ’165 patent and their infringement thereof since at least the filing of this Complaint. The Living Style Defendants have had knowledge of the ’165 patent at least as early as April 19, 2023 when L&P sent a cease-and-desist letter to Living Style’s licensor providing notice of the ’165 patent and their infringement thereof. The Henglin Defendants have had knowledge of L&P’s patents, including the ’165 patent, at least as early as June 6, 2025 when L&P sent a cease-and-desist letter to Henglin. Carya Smart has had knowledge of L&P’s patents, including at least the ’165 patent, at least as early as July 10, 2023 when L&P sent a cease-and-desist letter to Carya Smart.

70. Each of the Accused Seating Units capable of rocking comprises a powered rocker-recliner Carya Smart Accused Mechanism. The Accused Mechanisms are components and material parts of the invention of the ’165 patent. Defendants knew that the Accused Mechanisms are especially manufactured and/or adapted for use in a manner that infringes the ’165 patent when Defendants made, used, sold, offered for sale, imported, and/or incorporated into finished Accused Seating Units the Accused Mechanisms. The Accused Mechanisms are not staple articles of commerce and are not capable of any substantial noninfringing uses other than for infringement of the ’165 patent.

71. Defendants have induced direct infringement of the ’165 patent by Defendants’ customers (*e.g.*, furniture manufacturers, retailers, and consumers) because Defendants have committed specific acts that induced, aided, abetted, and/or facilitated this direct infringement with the knowledge that Defendants’ specific acts would result in direct infringement by Defendants’ customers.

72. Carya Smart has induced infringement of the ’165 patent by designing, manufacturing, and selling the Accused Mechanisms capable of rocking to its

customers (*e.g.*, furniture manufacturers such as Henglin and/or Living Style (Vietnam)), with the specific intent to encourage Carya Smart's customers to make, use, sell, offer for sale, and/or import the Accused Seating Units by incorporating the Accused Mechanisms therein, thus directly infringing the '165 patent. Carya Smart has also induced infringement of the '165 patent because Carya Smart copied the furniture mechanisms manufactured by Ultra-Mek and/or L&P when it designed the Accused Mechanisms with knowledge that Ultra-Mek and/or L&P's mechanisms were covered by the '165 patent. Carya Smart then sold those copied Accused Mechanisms to its customers with the specific intent that Carya Smart's customers would use the copied Accused Mechanisms in the same manner as the patented L&P and/or Ultra-Mek mechanisms and thus directly infringe the '165 patent. Carya Smart also induced its customers' direct infringement by marketing and advertising the Accused Mechanisms to its customers, and providing customer service and warranty support for the Accused Mechanisms to its customers.

73. The Living Style Defendants and the Henglin Defendants have induced infringement of the '165 patent by encouraging their customers (*e.g.*, furniture retailers and consumers) to directly infringe. For example, the Living Style Defendants and the Henglin Defendants sell the Accused Seating Units to furniture retailers with the specific intent that those furniture retailers will sell the Accused Seating Units to consumers and therefore directly infringe the '165 patent. The Living Style Defendants and the Henglin Defendants also induce customers' direct infringement by providing instruction manuals with the Accused Seating Units that inform customers how to complete assembly of the Accused Seating Units (*e.g.*, attaching the backrest, connecting power cables, *etc.*) and operate the Accused Seating Units (*e.g*, moving the seating units between recline positions) with the specific intent that their customers would do so according to the instructions. The Living Style Defendants and the Henglin Defendants also induce

customers' direct infringement by marketing and advertising the Accused Seating Units to their customers, and providing customer service and warranty support for the Accused Seating Units to their customers.

74. Defendants' infringement of the '165 patent has caused damage to and continues to damage Plaintiffs. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

75. On information and belief, Defendants will continue in and enlarge their infringement of the '165 patent unless and until they are enjoined by this Court.

76. The infringement of the '165 patent by Defendants has been willful and deliberate as Defendants have acted in an objectively reckless manner in view of the high likelihood that their acts constituted infringement of the '165 patent and with full knowledge of Plaintiffs' rights in the '165 patent. As discussed above, Defendants have known of the '165 patent and their infringement thereof and continued their unlawful actions nevertheless. Plaintiffs are entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

77. At all relevant times, L&P Property Management Company complied with 35 U.S.C. § 287(a) by requiring all licensees of the '165 patent to mark covered products.

**COUNT IV**

**(Infringement of United States Patent No. 8,398,168)**

78. Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1-77 of this Complaint.

79. Defendants directly infringe the '168 patent literally and/or under the doctrine of equivalents through acts including, but not limited to, the manufacture,

use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units and Accused Mechanisms that are capable of gliding. Defendants' manufacture, use, sale, importation, distribution, and/or offer for sale of the Accused Seating Units and Accused Mechanisms capable of gliding directly infringe at least claim 1 of the '168 patent literally and/or under the doctrine of equivalents as shown in Exhibit 8.

80. Defendants indirectly infringe the '168 patent by contributing to and/or inducing the direct infringement of the '168 patent by Defendants' customers (*e.g.*, furniture manufacturers, retailers, and consumers) when Defendants' customers manufacture, use, sell, import, distribute, and/or offer for sale the Accused Seating Units capable of gliding.

81. Defendants had knowledge of the '168 patent and their infringement thereof since at least the filing of this Complaint. The Living Style Defendants have had knowledge of the L&P patents, including the '168 patent, at least as early as April 19, 2023 when L&P sent a cease-and-desist letter to Living Style's licensor. The Henglin Defendants have had knowledge of L&P's patents, including the '168 patent, at least as early as June 6, 2025 when L&P sent a cease-and-desist letter to Henglin. Carya Smart has had knowledge of L&P's patents, including at least the '168 patent, at least as early as July 10, 2023 when L&P sent a cease-and-desist letter to Carya Smart. L&P also sent a letter to Carya Smart informing them of the '168 patent on June 6, 2025.

82. Each of the Accused Seating Units capable of gliding comprises a powered glider-recliner Carya Smart Accused Mechanism. The Accused Mechanisms are components and material parts of the invention of the '168 patent. Defendants knew that the Accused Mechanisms are especially manufactured and/or adapted for use in a manner that infringes the '168 patent when Defendants made, used, sold, offered for sale, imported, and/or incorporated into finished Accused

Seating Units the Accused Mechanisms. The Accused Mechanisms are not staple articles of commerce and are not capable of any substantial noninfringing uses other than for infringement of the ’168 patent.

83. Defendants have induced direct infringement of the ’168 patent by Defendants’ customers (*e.g.*, furniture manufacturers, retailers, and consumers) because Defendants have committed specific acts that induced, aided, abetted, and/or facilitated this direct infringement with the knowledge that Defendants’ specific acts would result in direct infringement by Defendants’ customers.

84. Carya Smart has induced infringement of the ’168 patent by designing, manufacturing, and selling the Accused Mechanisms capable of gliding to its customers (*e.g.*, furniture manufacturers such as Henglin and/or Living Style (Vietnam)), with the specific intent to encourage Carya Smart’s customers to make, use, sell, offer for sale, and/or import the Accused Seating Units by incorporating the Accused Mechanisms therein, thus directly infringing the ’168 patent. Carya Smart has also induced infringement of the ’168 patent because Carya Smart copied the furniture mechanisms manufactured by Ultra-Mek and/or L&P when it designed the Accused Mechanisms with knowledge that Ultra-Mek and/or L&P’s mechanisms were covered by the ’168 patent. Carya Smart then sold those copied Accused Mechanisms to its customers with the specific intent that Carya Smart’s customers would use the copied Accused Mechanisms in the same manner as the patented L&P and/or Ultra-Mek mechanisms and thus directly infringe the ’168 patent. Carya Smart also induced its customers’ direct infringement by marketing and advertising the Accused Mechanisms to its customers, and providing customer service and warranty support for the Accused Mechanisms to its customers.

85. The Living Style Defendants and the Henglin Defendants have induced infringement of the ’168 patent by encouraging their customers (*e.g.*, furniture retailers and consumers) to directly infringe. For example, the Living

Style Defendants and the Henglin Defendants sell the Accused Seating Units to furniture retailers with the specific intent that those furniture retailers will sell the Accused Seating Units to consumers and therefore directly infringe the ’168 patent. The Living Style Defendants and the Henglin Defendants also induce customers’ direct infringement by providing instruction manuals with the Accused Seating Units that inform customers how to complete assembly of the Accused Seating Units (*e.g.*, attaching the backrest, connecting power cables, *etc.*) and operate the Accused Seating Units (*e.g*, moving the seating units between recline positions) with the specific intent that their customers would do so according to the instructions. The Living Style Defendants and the Henglin Defendants also induce customers’ direct infringement by marketing and advertising the Accused Seating Units to their customers, and providing customer service and warranty support for the Accused Seating Units to their customers.

86. Defendants’ infringement of the ’168 patent has caused damage to and continues to damage Plaintiffs. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

87. On information and belief, Defendants will continue in and enlarge their infringement of the ’168 patent unless and until they are enjoined by this Court.

88. The infringement of the ’168 patent by Defendants has been willful and deliberate as Defendants have acted in an objectively reckless manner in view of the high likelihood that their acts constituted infringement of the ’168 patent and with full knowledge of Plaintiffs’ rights in the ’168 patent. As discussed above, Defendants have known of the ’168 patent and their infringement thereof and continued their unlawful actions nevertheless. Plaintiffs are entitled to increased damages under 35 U.S.C. § 284 and attorneys’ fees and costs under 35 U.S.C. § 285.

89. At all relevant times, L&P Property Management Company complied with 35 U.S.C. § 287(a) by requiring all licensees of the ’168 patent to mark covered products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

a. Enter a judgment that Defendants have infringed the ’348 patent;

b. Enter a judgment that Defendants have infringed the ’693 patent;

c. Enter a judgment that Defendants have infringed the ’165 patent;

d. Enter a judgment that Defendants have infringed the ’168 patent;

e. Grant a preliminary and permanent injunction restraining and enjoining Defendants, their officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing the ’165 patent, ’168 patent, ’348 patent, and the ’693 patent;

f. Award Plaintiffs damages in an amount sufficient to compensate Plaintiffs for Defendants’ infringement of the asserted patents, but not less than a reasonable royalty;

g. Enter judgment that Defendants’ infringement be found to be egregious and/or willful from the time Defendants became aware of the infringing nature of their products, and that the Court award treble damages for the period of such egregious and/or willful infringement of the ’165 patent, ’168 patent, ’348 patent, and the ’693 patent pursuant to 35 U.S.C. § 284 and attorney’s fees;

h. Award prejudgment interest to Plaintiffs under 35 U.S.C. § 284;

i. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiffs their reasonable attorneys’ fees, expenses, and costs incurred in this action;

j. Award Plaintiffs their costs incurred in this action; and

k. Grant such other and further relief as this Court may deem just and proper.

Dated: August 24, 2026

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Alton L. Absher III*
Alton L. Absher III
Rishi Gupta

Attorneys for Plaintiffs
ULTRA-MEK, INC., LEGGETT & PLATT, INC., AND L&P PROPERTY MANAGEMENT COMPANY